### DORA E. ISAACSON *vs.* CITY OF BOSTON.

Suffolk.　March 6, 1907. — April 1, 1907.

Present: KNOWLTON, C. J., MORTON, HAMMOND, SHELDON, & RUGG, JJ.

*Way,* Defect in highway.

A depression in the brick sidewalk of a highway an inch and a half in depth at its deepest part, caused by a settling of the bricks which is very even and without any abrupt displacement of separate bricks, is not a defect in the highway.

TORT for personal injuries alleged to have been caused by a defect in the sidewalk of Chelsea Street in that part of Boston called East Boston while the plaintiff was travelling thereon on or about December 9, 1902. Writ dated December 30, 1902.

In the Superior Court *Sherman,* J. by agreement of counsel ordered a verdict for the defendant, and reported the case for determination by this court, with the agreement that if there was no evidence that should have been submitted to the jury judgment should be entered on the verdict as ordered; otherwise, that judgment should be entered for the plaintiff in the sum of $1,500.

The case was submitted on briefs.

*P. W. Carver,* for the plaintiff.

*P. Nichols,* for the defendant.

HAMMOND, J. Several witnesses called by the plaintiff testified as to the condition of the sidewalk, but upon an inquiry by the court the counsel for the plaintiff very properly stated in substance that so far as respected the condition he should rely upon the evidence of one Harriman as giving an accurate de-

scription.   This witness was an experienced civil engineer, and he testified from measurements actually made by him in behalf of the plaintiff shortly after the accident.   On this matter Harriman testified as follows: " I was taken to Chelsea Street, and on the north sidewalk, opposite number 152, my attention was called to the sidewalk in general to make an examination for the discovery of any defects or changes in the grades or levels, and exactly in front of the steps there is a depression of the bricks, the total depression being about an inch and [a] half deep.   It was sort of a scoop-shaped depression, and fell towards the curbstone as well as lengthways on the sidewalk; it came in from each side."   The depression " started, we will say, about one-third of the sidewalk from the steps; it was within one-third of the width of the sidewalk toward the steps — we will say about three and one-half feet from the steps — and extended a little over six feet to the curbstone, and in width, I have a note here that it covered the width of twelve bricks. . . . The depression fell within that space. . . . The real grade was a little more abrupt than what would be implied by that, but there were those bricks that had been displaced by the change of the grade. . . . They had settled."   Upon cross-examination he testified that the bricks were there but " had settled, the deepest depression being an inch and a half."   He further testified that the depression " commenced at the edge and sloped down. . . . As you got away from the edge bricks it was more sudden, as you got toward the centre bricks; the outside bricks were nearer the grade of the sidewalk."   He also testified that the twelve bricks were each four inches wide, and that " the settlement was very even; there was no real abrupt displacement of the separate bricks."   At the time he examined the sidewalk there was snow and ice upon it, but he cleared it away so that he could make measurements.

This condition of the sidewalk was not a defect.   See *Newton v. Worcester*, 174 Mass. 181.   The evidence seems to indicate that the plaintiff simply slipped upon the ice and snow, but in view of the conclusion to which we have come it is unnecessary to consider any other ground of defence.

*Judgment on the verdict.*